# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 03-1167, 03-2552

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

PAUL FAZZINI,

*Defendant-Appellant.*

_____

Appeals from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 86 CR 1—**James B. Zagel**, *Judge.*

_____

ARGUED SEPTEMBER 30, 2004—DECIDED JULY 6, 2005

_____

Before ROVNER, WOOD, and SYKES, *Circuit Judges.*

WOOD, *Circuit Judge.* After serving 14 years for armed bank robbery, Paul Fazzini was released from federal prison on March 22, 2001. While Fazzini's post-release status has since become a disputed issue, at the time of his release, both he and the government believed that he was on probation. (Fazzini was sentenced before the Federal Sentencing Guidelines came into effect, which is why supervised release was not an option.) One condition of his probation required him to submit blood so that his DNA could be catalogued in the government's ever-growing database. See National DNA Index System, Statistics,

available at http://www.fbi.gov /hq/lab/codis/clickmap.htm (as of April 2005, the Combined DNA Index System (CODIS) contained 2,443,274 distinct DNA profiles). The federal DNA Analysis Backlog Elimination Act of 2000, 42 U.S.C. §§ 14135-14135e, now makes cooperation a condition of probation or parole, see 42 U.S.C. § 14135c, and failure to comply constitutes a misdemeanor, see 42 U.S.C. § 14135a(a)(5).

Fazzini objected to having his blood or DNA collected. On September 17, 2002, he filed a motion with the district court arguing that being forced to provide a blood sample conflicts with his Christian Scientist beliefs, violates his rights under the Fourth and Fifth Amendments, and contravenes the Constitution's *ex post facto* clause. (He did not say anything about the Religious Freedom Restoration Act, RFRA, 42 U.S.C. § 2000bb-1, and thus neither do we.) Fazzini asked the district court to appoint counsel on his behalf and permanently enjoin the government from enforcing the Act against him. The district court denied both requests and ordered Fazzini to comply. Fazzini appealed. Interesting though the merits of the DNA claim may be, we must first untangle the snarl of jurisdictional issues that have arisen. We conclude that we have appellate jurisdiction over the appeal, but that the district court lacked jurisdiction to consider the merits of Fazzini's claims. We therefore vacate the district court's order.

**I**

When the district court denied Fazzini's motions for injunctive relief and appointment of counsel on November 7, 2002, it offered no explanation for its decision, nor did it enter anything looking like a final judgment under FED. R. CRIM. P. 32(k) or 32.1 and 18 U.S.C. § 3565(a). At that point, Fazzini's probation officer filed a Special Report with the court, requesting a rule to show cause why

Fazzini's probation should not be revoked because of his failure to cooperate with this condition. The court set a hearing for December 17, 2002. When Fazzini did not show up for this hearing, a warrant was issued for his arrest. After the authorities caught up with him on January 8, 2003, the judge rescheduled the probation revocation hearing for January 10, 2003.

At the January 10 hearing, the court decided on its own initiative to reconsider its earlier denial of Fazzini's request for the injunction, stating: "I have ruled on it, but I took another look at it. . . . I have attempted to read this Christian Science doctrine, the fact of the matter is, he is prohibited from voluntary acts. This one is involuntary because I am ordering him to do it." The court then reinstated Fazzini's probation and ordered him to "comply with the direction of the probation officer."

A week later, Fazzini, proceeding *pro se*, filed his first notice of appeal to this court (No. 03-1167), asking us to overturn the district court's decision denying his request for an injunction. Noting that the original order denying the injunction was docketed on November 7, 2002, and concerned that the January 10 hearing may not have resulted in a final decision with respect to the requested injunctive relief, we ordered both parties to address the potential jurisdictional snag. Although interlocutory appeals are possible from orders granting or denying injunctive relief, see 28 U.S.C. § 1292(a)(1), FED. R. APP. P. 4(b)(1) nevertheless requires that the notice of appeal in a criminal case "must be filed with the district court within 10 days after the later of: (i) the entry of either the judgment or the *order* being appealed. . . ." Later, the district court entered an order on June 6, 2003, confirming that the January 10 transcript "contains the final orders of the Court." Fazzini filed his second notice of appeal (No. 03-2552) from that order.

After the case reached this court, the government realized that it had made a mistake. From the time of Fazzini's release in March 2001, Fazzini and the government had been proceeding under the assumption that Fazzini was serving his five-year term of probation. Soon after his release, the United States Probation Office executed a document stating that Fazzini's "term of probation is for a period of 5 years commencing on March 22, 2001." In preparation for this appeal, however, the government discovered an even earlier document, signed on the day of Fazzini's release, which purported to place him under mandatory release, a form of parole. Fazzini's exit document read, "Upon release, the above named person is to remain under the jurisdiction of the United States Parole Commission, as if on parole." After accepting this new evidence into the record, we ordered the parties to address its jurisdictional implications in their briefs on the merits.

If all of this were not enough, Fazzini was arrested in Ohio on September 11, 2003, for speeding. He was outside the bounds of his post-release travel perimeter and possessed a counterfeit driver's license. A search of his car turned up evidence suggesting that he was planning a bank robbery spree across Wisconsin, Illinois, Indiana, and Ohio. At this point, on the new understanding that Fazzini was on a form of parole and not probation, the government instituted parole revocation proceedings against him. On March 30, 2004, the U.S. Parole Commission revoked Fazzini's parole. We learned at oral argument that Fazzini has filed a habeas corpus petition in Ohio, contending, as he does here, that he was on probation at the time of his rearrest. If this were so, there would be no parole for the Parole Commission to revoke (although it seems likely that some action would still be possible, given his extensive misbehavior).

## II

The original point of this appeal, the constitutionality of the DNA Act, is now buried beneath these procedural complications. The first question is whether we have appellate jurisdiction over the case. That issue turns on whether Fazzini filed a timely notice of appeal. If appellate jurisdiction is secure, the next question is whether the district court had jurisdiction. The answer to that depends on whether Fazzini was on probation, which would be within the district court's power to address, or parole, which is under the exclusive control of the Parole Commission.

The government argues that we do not have jurisdiction to hear this case because Fazzini's notice of appeal even in No. 03-1167 was untimely. It reasons that since the district court denied Fazzini's motion to enjoin the application of the DNA Act in November 2002, Fazzini's January 17, 2003 notice of appeal was far past the 10-day window allowed by Fed. R. App. P. 4(b). Because this was, at root, a criminal case, it is not governed by the documentation requirements for final judgments found in Fed. R. Civ. P. 58. Instead, the procedures governing revocation or modification of probation were the applicable ones, if anything authorized the district court to act. See 18 U.S.C. § 3565(a); Fed. R. Crim. P. 32.1(d). Under § 3565(a), the district court was free to examine the question of Fazzini's alleged probation at any time prior to the expiration of the term of probation (and indeed, under § 3565(c), even beyond that term as long as the warrant or summons had been issued prior to its expiration). The district court was therefore free to reconsider its decision in January 2003, and Fazzini remained free to file a notice of appeal from either that ruling or the June 6 order. This court therefore has jurisdiction to decide the appeals.

The question whether the district court had jurisdiction over the case is more difficult. As we noted, it turns on

whether Fazzini left prison on probation or parole. The district court is the entity with the power to continue, modify, or revoke probation. See 18 U.S.C. §§ 3563(c), 3565. Parole, however, falls under the clemency powers delegated to the Executive Branch, see U.S. CONST., art. II, § 2. If Fazzini's mandatory release really was a form of parole, as the initial document issued by the Probation Office stated, then the district court would have had no jurisdiction to act in response to a request to modify or revoke it. See 18 U.S.C. § 4214 (repealed by the Sentencing Reform Act of 1984, but remaining in effect for defendants, like Fazzini, who committed the underlying offense before November 1, 1987. Pub. L. 98-473, Title II, § 218(a)(4), Oct. 12, 1984, 98 Stat. 2027; we refer to this below by noting statutory provisions that are still in effect for parolees). In the event the Parole Commission rejected Fazzini's challenge to the DNA condition, he perhaps could pursue the matter using a writ of habeas corpus, see 28 U.S.C. § 2241, a *Bivens* action, see *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), or even a claim under the Administrative Procedures Act, see 18 U.S.C. § 4218(a). No such claim would accrue, however, until the Parole Commission had a chance to consider the issue at hand. See 42 U.S.C. § 1997e(a).

We turn, therefore, to the proper characterization of Fazzini's status. The confusion stems from two conflicting documents. First, just before leaving the prison, Fazzini signed a document titled, "United States Parole Commission Certificate of Mandatory Release," which read:

> [Fazzini] was released by the undersigned according to Title 18, U.S.C. Section 4163. Upon release [Fazzini] is to remain under the jurisdiction of the United States Parole Commission, as if on parole as provided in Title 18, U.S.C. Section 4164, as amended . . . until expiration of the maximum term, or terms of sentence, less 180 days on July 4, 2010, with a total of 3,571 days remaining to be served.

A few days later, Fazzini signed a second document, titled, "Conditions of Probation and Supervised Release," which read: "Under the terms of this sentence, the defendant has been placed on probation. . . . The defendant's term of probation is for a period of 5 years commencing on March 22, 2001." For reasons that are now lost, Fazzini, the government, and the district court all relied on this second document and classified Fazzini as a probationer. Our review of the applicable statutes, however, reveals that the first document was in fact the one that characterized Fazzini's status correctly.

For reasons irrelevant to this appeal, Fazzini was resentenced in 1990, after he had already served three years in prison. According to his new sentence, Fazzini was set to remain in prison for 25 years, after which he was to be on probation for five years. Prison officials released Fazzini early under a statute that has since been repealed, which shortened an inmate's time in prison if he behaved well while there. See 18 U.S.C. § 4161 *et seq.* (repealed by the Sentencing Reform Act of 1984, see 98 Stat. 1987, but remaining in effect for parolees). A prisoner released under this statute is "deemed as if released on parole until the expiration of the maximum term or terms for which he was sentenced less one hundred and eighty days." 18 U.S.C. § 4164. Thus, as the first document Fazzini signed correctly recounted, he began serving a term of "mandatory release," as if on parole, until the end of his original prison term, less 180 days.

Fazzini argues that this conclusion cannot be correct because he was convicted under 18 U.S.C. § 924(c) (1987), part of which stipulated at the relevant time that "[n]o person sentenced under this subsection shall be eligible for parole during the term of imprisonment imposed herein." While Congress has changed this language to reflect the abolition of parole in the federal system effected by the Sentencing Reform Act of 1984, the old language still governs pre-Guidelines crimes.

Although we acknowledge that there is some tension between the release provided by § 4164 and the parole prohibition provided by the former version of § 924(c), we do not find the two to be irreconcilable. As the government points out, it is still possible to preclude ordinary parole for prisoners convicted of violating § 924(c) and allow the automatic rule of § 4164 to operate. In fact, all that § 4164 does is to permit good-time credits to be taken into account while computing the release date, which is exactly what is now done in the post-Sentencing Guidelines world in which there is no parole for any offenses. The "parole" that applies to defendants like Fazzini is now covered by supervised release. It would be passing strange to think that Congress wanted persons sentenced before the Guidelines regime went into effect to be released at the end of their term, net of good-time credits, without equivalent supervision. What § 924(c) prohibits is the far more generous rule, from the prisoner's standpoint, under which he or she would have become eligible for parole after serving approximately one-third of the sentence.

Finally, Fazzini argues that even if he were on a form of parole at the time of his release, we should still consider the merits of his claim, because as soon as his period of parole ends, he will be on probation and subject to the DNA Act. While Congress has given the federal courts authority to manage probation, see 18 U.S.C. §§ 3651, 3653 (1982) (repealed), the Supreme Court has stressed that the courts must handle probation in such a way as to "avoid interference with the parole and clemency powers of the Executive Branch." *Affronti v. United States*, 350 U.S. 79, 83 (1955). Such interference is not likely when a district court revokes a parolee's future probation on account of conduct committed during the parole term. See *Knight v. United States*, 73 F.3d 117, 123 (7th Cir. 1995). That type of action affects the timing and existence of probation, not its conditions. The situation is quite different if the defendant is attacking a

future condition of probation that is also a current condition of parole. That describes Fazzini's situation: he is subject to the DNA requirement both as a condition of his parole and as a condition of his future probation (if any). See 42 U.S.C. § 14135a(a)(2) (requiring DNA from any "individual on probation, parole, or supervised release . . . who is, or has been, convicted of a qualifying Federal offense."). Finding the collection of DNA an unconstitutional condition of Fazzini's future probation would necessarily implicate his current parole. We conclude that at this point, this issue lies squarely within the baliwick of the Parole Commission, and that the district court did not have jurisdiction to consider Fazzini's complaint. (We note parenthetically that Fazzini will be fighting an uphill battle when the time comes, in light of decisions such as *Green v. Berge*, 354 F.3d 675 (7th Cir. 2004).)

## III

In summary, although this court has appellate jurisdiction, we conclude in light of all the facts that have now come out that the district court had no jurisdiction to entertain the case. The order of the district court is therefore VACATED and the case is remanded for DISMISSAL for want of jurisdiction.

A true Copy:

    Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*